# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN KIRKELIE,<br><br>  Plaintiff,<br><br>  v.<br><br>C.O. THISSELL, et al.,<br><br>  Defendant. | Case No.: 1:15-cv-00735-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>[ECF Nos. 17, 20] |

Plaintiff Jonathan Kirkelie is a prisoner in the custody of the Federal Bureau of Prisons ("BOP").

Plaintiff consented to United States Magistrate Judge jurisdiction on May 28, 2015. Defendants have not consented or declined to United State Magistrate Judge jurisdiction.

On January 25, 2016, the Court found that Plaintiff's second amended complaint stated a cognizable Fourth and Eighth Amendment claim against Defendant Thissell and a cognizable Eighth Amendment claim for failure to protect against Defendants Smith, Madttavi, Masterson, Knoll, and Does 1 and 2. (ECF No. 20.) The Court dismissed all other claims and Defendants from the action for failure to state a cognizable claim for relief. (Id.) The Court indicated that jurisdiction existed under 28 U.S.C. § 636(c) based on the fact that Plaintiff had consented to Magistrate Judge jurisdiction and no other parties had yet appeared. (Id.)

1

On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil case. Williams v. King, __ F.3d __, Case No. 15-15259, 2017 WL 5180205, *3 (9th Cir. Nov. 9, 2017). Accordingly, the Court did not have jurisdiction to dismiss the claims and Defendants in its January 25, 2016 order.

Based upon the foregoing, the undersigned will now recommend to the District Judge that this case continue to proceed only on Plaintiff's cognizable claims, and that the claims and Defendants described below be dismissed, for the reasons explained herein.

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer

possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.
## COMPLAINT ALLEGATIONS

On September 14, 2014, during dinner at the Federal Correctional Institution of Mendota, California, Plaintiff was exiting his assigned job in the chow hall on the "A" side at sometime between 5:00 and 6:00 p.m. Correctional officer Thissell pulled Plaintiff to the side to conduct a pat-down search of Plaintiff's person.

Thissell's pat-down began from the back, roaming his hands all over Plaintiff's upper body. Thissell then grabbed and cupped Plaintiff's genitals in an aggressive manner. Thissell then whispered in Plaintiff's ear, "You don't feel like a Mexican." Thissell then searched up and down each leg of Plaintiff and then stepped back. Plaintiff took a step forward, believing the search was concluded, at which time and without warning Thissell from behind aggressively grabbed Plaintiff's genitals again causing another surge of excruciating pain to Plaintiff.

The sexual assault was witnessed by several inmates and officer Alvarez. Alvarez was standing directly to Thissell's right and witnessed the sexual assault. Thissell's conduct was so outrageous that the Plaintiff and others watching saw Alvarez's jaw fall open.

After the assault, Plaintiff was in excruciating pain, embarrassed and in shock and walked back to his housing unit with inmate Owens, who also witnessed the sexual assault by Thissell. Upon arrival at his housing unit and with word of the assault by Thissell being spread by other inmates and staff who were witnesses, Plaintiff was informed of his right to file a complaint under the Prison Rape Elimination Act ("PREA"). Plaintiff filed the complaint and waited to be contacted by prison officials.

On or about September 16, 2014, Plaintiff sought help from the prison's psychological services department. Unfortunately, Plaintiff was turned away unseen because no one was available. Approximately one week later, and with no response from Plaintiff's PREA complaint and no action

by prison officials, Plaintiff used the prison's e-mail system to report the Thissell sexual assault to Defendant Warden Gill.

On or about September 25, 2014, Plaintiff was called to the Lieutenant's office and was interviewed by Lieutenant Smith and another unknown Lieutenant regarding the sexual assault by Thissell. During the interview, Plaintiff was asked to give an account of the sexual assault. Plaintiff explained in detail what occurred and that officer Alvarez witnessed the entire incident, along with several inmates. Smith concluded the interview by stating that Thissell was new and improperly trained and that the incident was "no big deal."

Smith then sent Plaintiff to the prison's medical facility to be examined. Upon arrival, Plaintiff was met by two nurse staff members (a female and a male). Plaintiff, while in the exam room, was asked to pull down his pants for his genitals to be examined. Plaintiff requested twice for the female to leave the room. Each time, the female nurse refused. After the third request, the female nurse refused to leave but turned her back while the examination was conducted.

From approximately September 26, 2014 to October 6, 2014, Plaintiff met with Defendant Psychologist Madttavi on four separate visits.

During the first session, Plaintiff was asked by Madttavi after explaining the sexual assault by Thissell to write down the "pros" and "cons" of reporting the sexual assault within five minutes. Plaintiff complied with the request by Madttavi who read the list and threw it in the trash in front of Plaintiff.

During the second session, Plaintiff explained he was having trouble sleeping and was anxious, among other things, which was interfering with his relationship with his girlfriend. Plaintiff discussed his feelings toward Thissell and the sexual assault. Madttavi concluded the session and gave Plaintiff a pamphlet entitled "Steps to Progressive Muscle Relaxation," and Madttavi told Plaintiff that his feelings were normal and to read the pamphlet.

During the third session, Plaintiff discussed his relationship with his girlfriend and family. There was no discussion regarding the sexual assault by Thissell.

During the fourth session, Plaintiff inquired about any action taken by the prison regarding the sexual assault by Thissell. Plaintiff expressed more concern as to Thissell working in the Plaintiff's

housing unit. Plaintiff further explained how the verbal sexual harassment and pat-down searches were becoming everyday events by Thissell. Plaintiff explained that he felt Thissell was retaliating against him and felt uncomfortable with Thissella assigned to his housing unit. Madttavi concluded the session by telling Plaintiff there was nothing he could do to help him, and Plaintiff's only option was to proceed through the administrative remedy process.

On or about October 12, 2014, Plaintiff returned to the housing unit, at which time he was shocked to see Thissell working in the unit. Upon entering the unit, Plaintiff was singled out of several other inmates for a pat-down search of Plaintiff's person by Thissell. While Thissell conducted the pat-down of Plaintiff, Thissell was laughing at Plaintiff after noticing that Plaintiff was trembling and obviously afraid of Thissell.

Thissell's hand movements were odd, as the pat-down was more along the lines of being rubbed down than a search. Thissell made several sexual comments to the Plaintiff that he had a nice body and that his skin was soft. Throughout Thissell's shift, he stared at Plaintiff and made inappropriate comments.

On October 15, 2015, Plaintiff while working his assigned prison job spoke to Defendant Captain (last name unknown) and the same unknown Lieutenant who was in the September 25, 2014, interview. Plaintiff explained the sexual assault to the Captain and also stated that Thissell was continuing to make sexual remarks and single him out for pat-down searches in retaliation. The unknown Lieutenant, in front of the Captain, told Plaintiff that he would make sure that Thissell was put in a different housing unit.

On October 16, 2015, Plaintiff went to see Madttavi about Thissell working the housing unit. Plaintiff explained that he was intimidated by Thissell and he was uncomfortable by the sexual remarks being made to him by Thissell. Plaintiff pleaded that Madttavi do something to help. Madttavi told Plaintiff that he could not help him and he had to go through the administrative remedy process.

On or about October 19 through 25, 2014, Thissell was assigned to work the Plaintiff's housing unit. Every day that Thissell worked the Plaintiff's housing unit, he was singled out for a pat-

down search and Thissell told Plaintiff "You're looking good!" During the pat-down searches, Thissell ran his hands in a creepy masochistic manner while making sexual comments to Plaintiff.

On one occasion, Thissell whispered in Plaintiff's ear while rubbing Plaintiff's shoulders "You're losing weight and you look good, Mr. Kirkelie!" While performing a pat-down search of Plaintiff, Thissell would often move both hands up and down each leg pushing to the Plaintiff's genitals and commented "You're no happy to see me, Mr. Kirkelie?"

On October 25, 2014, Thissell, while working in Plaintiff's housing unit, singled out Plaintiff for a pat-down search. Thissell made sexual comments to the Plaintiff while he roamed his hands over his chest, cupping and kneading Plaintiff's body. Thissell noticed that Plaintiff was extremely upset and proceeded to search Plaintiff's locker tossing things around while laughing at Plaintiff.

Plaintiff called his father, Jeff Kirkelia and explained the situation. Plaintiff's father informed Plaintiff he would call the prison to address the sexual assaults by Thissell. Plaintiff's father called Lieutenant Masterson.

On November 10 and 14, 2014, Thissell, while assigned to Plaintiff's housing unit, singled out Plaintiff for a pat-down search. During the pat-down, Thissell's hands roamed Plaintiff's body in an inappropriate manner, and Thissell made more sexual comments about Plaintiff's body and asked why he was so tense. Thissell's hands went up and down each leg, pausing while pressing the Plaintiff's genitals.

On November 16, 2014, Plaintiff was notified by his counselor that the initial request for an administrative remedy against Thissell was "lost." Plaintiff then began the process all over again by submitting a new administrative remedy.

In early to mid-January 2015, Plaintiff through the prison e-mail system, contacted the Associate Warden of Operations and inquired about the status of his complaint against Thissell. The Associate Warden informed Plaintiff that there was no record of Plaintiff's complaint.

On January 23, 2015, Plaintiff met with a prison staff member who presented him with his BP-9 (administrative remedy request) one month late. The unknown prison official requested that Plaintiff back-date the log book in order to make the late BP-9 look as if it were in compliance and

timely. Plaintiff refused and demanded the prison official put the correct date in the log book reflecting the actual date the Plaintiff received the untimely BP-9 response from the Warden.

On March 5, 2015, Plaintiff met with A. Riofrio, who presented Plaintiff with a late BP-10 response. A. Riofrio told Plaintiff, "it was not her fault that the BP-10 was late. It must have been misplaced in another unit."

Sometime in late March or early April 2015, Thissell was back working in Plaintiff's housing unit. During all of the times that Thissell worked in Plaintiff's housing unit, he singled out Plaintiff for a pat-down search and then shook down his locker. During the pat-downs, Thissell moved his hands in an unprofessional manner and made sexual comments about Plaintiff's body.

On or about April 4, 2015, Plaintiff sent through the prison e-mail system to the new Warden, Zuniga, and asked why Thissell is constantly put back in the Plaintiff's housing unit with knowledge that Plaintiff had filed a sexual assault claim against him.

On or about April 7, 2015, Plaintiff was summoned to see Lieutenant Knoll. Knoll told Plaintiff that their investigation was over and "Knoll will put Thissell anywhere on this compound he wants."

On May 15, 2015, Plaintiff filed a civil rights complaint with this Court.

Sometime thereafter, Plaintiff's locker was shaken down by an unknown correctional officer or officers. The only items missing from Plaintiff's locker were Plaintiff's note and a calendar which documented everything that took place involving the sexual assault by Thissell, including the BP-9, Bp-10 and BP-11 inmate appeals.

On or about May 28, 2015, Plaintiff received a 300-series write up for having a clothesline in his living area. The write up was made by A. Riofrio, a prison secretary who the Plaintiff named in his various requests for administrative remedy and the same individual who requested that Plaintiff falsify the incorrected dated document.

On or about July 28, 2015, Plaintiff was transferred to the Federal Correctional Institution at Terminal Island, California, where he is currently incarcerated.

Sometime between April and June 2015, Plaintiff spoke to inmate Jamie Hernandez-Samudio (Fed. Reg. No. 11629-010), who told Plaintiff that he was also sexually assaulted by Thissell and

when he informed Lieutenants Smith and Knoll, he was locked in the staff bathroom for over one hour. Smith and Knoll later threatened inmate Hernandez-Samudio with placement in the Special Housing Unit to be "buried there."

### III.

### DISCUSSION

#### A. Fourth Amendment

The Fourth Amendment to the United States Constitution guarantees freedom from unreasonable search and seizure. U.S. Const. amend. IV. The touchstone for all issues under the Fourth Amendment is reasonableness. "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. Bell v. Wolfish, 441 U.S. 520, 559 (1979). Reasonableness is determined by examining the totality of the circumstances. Id.

The determination of reasonableness of a search "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Id. at 559-560. The scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted must all be considered. Id. at 559; Bull v. City and County of San Francisco, 595 F.3d 964, 972 (9th Cir. 2010).

Based on the allegations in the complaints and viewed in the light most favorable to Plaintiff, Plaintiff states a cognizable claim against Defendant officer Thissell under the Fourth Amendment.

#### B. Eighth Amendment

A prion official violates the Eighth Amendment's proscription of cruel and unusual punishment where he or she deprives a prisoner of the minimal civilized measure of life's necessities with a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Jordan v. Gardner, 986 F.2d 1521, 1525 (9th Cir. 1993) (en banc) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks and indications of alteration omitted).

Although inmates, have a "limited right to bodily privacy," Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir. 1988), the Eighth Amendment protects inmates from repetitive and harassing

searches, and from sexual abuse, Schwenk v. Hartford, 204 F.3d 1187, 1196-1197 (9th Cir. 2000). The Ninth Circuit has recognized that digital rectal searches are highly intrusive and humiliating. Tribble v. Gardner, 860 F.2d 321, 324 (9th Cir. 1998). Prisoners thus have a clearly established right to be free from digital rectal searches conducted for purposes unrelated to legitimate penological concerns. Tribble, 860 F.2d at 325-327. A digital rectal search may violate the Eighth Amendment if it is not reasonably related to any legitimate penological concerns. Id. at 325 n. 6. The Ninth Circuit has also held that, under limited circumstances, a bodily search involving intimate touching may inflict psychological pain sufficient to implicate the Eighth Amendment even in the absence of sexual assault. In Jordan v. Gardner, the Ninth Circuit held that a prison policy requiring male guards to conduct frequent random clothed body searches of female inmates constituted cruel and unusual punishment when the policy was adopted despite the warnings of prison psychologists that the intrusive searches would severely traumatize inmates, many of whom had pre-incarceration histories of sexual abuse by men. Jordan, 986 F.2d at 1523-1531. By contrast, the Ninth Circuit has also found that "the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons" of which "we do not approve," but which do not violate the Eighth Amendment. Somers v. Thurman, 109 F.3d 614, 622 (9th Cir. 1997) (internal quotation marks omitted). Thus, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9; Calhoun v. DeTella, 319 F.3d 936, 939 (9th Cir. 2003).

Based on Plaintiff's allegations in the second amended complaint, Plaintiff states a cognizable claim under the Eighth Amendment for cruel and unusual punishment against Defendant Thissell.

**C. Failure to Protect**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (quotations omitted). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official

acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

Based on Plaintiff's allegations in the second amended complaint, Plaintiff states a cognizable claim for failure to protect against Defendants Smith, Captain (unknown last name "Doe 1"), Madttavi, Masterson, Knoll, and Lieutenant (unknown name "Doe 2"). However, Plaintiff fails to state a cognizable claim against Defendants Gill, Roupe, and Conners as there are insufficient allegations to link any of these individuals to affirmative actions or omissions for liability under Bivens.

### D. Supervisory Liability

As noted above, to state a claim under Bivens, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. There is no respondeat superior liability, and each defendant is only liable for his or her own misconduct. Iqbal, 566 U.S. at 676-677. A defendant cannot be held liable solely on the basis of supervisory responsibility or position. See Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1990) (respondeat superior theory of liability inapplicable to Bivens actions).

Plaintiff's second amended complaint is devoid of any allegations supporting the existence of a supervisory liability claim against Warden Gill or Zunich. The only basis for such a claim would be respondeat superior, which is precluded under Bivens.

### E. Conspiracy

An actionable Bivens conspiracy claim requires (1) the existence of an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991).

There are insufficient facts from which the Court can reasonable infer an agreement to violate Plaintiff's constitutional rights under the Fourth and Eighth Amendments. The facts in Plaintiff's second amended complaint demonstrate only that Defendant Thissell, himself, subjected Plaintiff to sexual assaults while working in Plaintiff's housing unit.

///

## IV.

## RECOMMENDATIONS

Plaintiff's complaint states a cognizable claim against Defendant Thissell for violations under the Fourth and Eighth Amendments, and against Defendants Smith, Madttavi, Masterson, Knoll and Does 1 and 2 for failure to protect in violation of the Eighth Amendment. However, Plaintiff fails to state a cognizable claim against Defendants Gill, Roupe, Conners, Zunich and Does 3 through 10 or a supervisory and conspiracy claim.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. For screening purposes only, this action proceed against Defendant Thissell for violations under the Fourth and Eighth Amendments, and against Defendants Smith, Madttavi, Masterson, Knoll and Does 1 and 2 for failure to protect in violation of the Eighth Amendment; and

2. All other claims and Defendants be dismissed from the action for failure to state a cognizable claim for relief.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 29, 2017**

UNITED STATES MAGISTRATE JUDGE